Pfeifer, J.,
dissenting.
{¶ 41} I agree with much of the majority opinion, including its most important holding, that R.C. 5751.53(D) authorizes the tax commissioner to issue a final determination changing the amount of potential commercial-activity-tax credit to reflect a taxpayer’s correction of an inaccuracy or error in the original reported amount. I agree that the books and records used to compute the amortizable amount must be maintained in accordance with generally accepted accounting principles (“GAAP”) and that when such books and records are corrected to become GAAP-compliant, the tax commissioner should recognize that correction when determining the amortizable amount pursuant to R.C. 5751.53(D).
{¶ 42} I disagree, however, with the majority’s ultimate disposition of the case, vacating the decision of the Board of Tax Appeals (“BTA”) and remanding the cause to the BTA. The majority concludes that the BTA did not consider the testimony of appellant Navistar, Inc.’s experts regarding whether the original valuation allowance was in compliance with GAAP, and it admonishes the BTA to, on remand, “carefully consider and weigh all pertinent evidence before determining whether Navistar’s original valuation allowance was in compliance with GAAP.” Majority opinion at ¶ 36.
*471 {¶ 43} Does this court have a reason to believe that the BTA was not “careful” in making its determination the first time around? Is assessing carefulness a part of our standard of review of BTA decisions? The fact that Navistar’s experts are not mentioned in the BTA’s decision does not mean that the BTA failed to take into account their testimony. Obviously, the BTA placed more weight on the statements that Navistar itself made at the time it filed the amortizable amount with the Department of Taxation. The BTA quotes the statement from Navistar’s assistant director of tax that Navistar was “ ‘currently undergoing a restatement of its financial statements for the years 2002, 2003, 2004 and 2005’ ” and that “ ‘[Navistar] believe[s] that changes will occur to the 2002, 2003 and 2004 financial statements as part of this examination which will impact the return and report that we are filing today.’ ” BTA No. 2010-575, 2013 Ohio Tax LEXIS 7601, 9 (Dec. 31, 2013). The BTA decision also quotes from Navistar’s statement to the Securities and Exchange Commission apprising it of errors in Navistar’s previously filed financial statements:
In its Form 10-K, [Navistar] stated, in part: “In addition, in previously issued financial statements, we had established a partial valuation allowance with respect to our net U.S. and Canadian deferred tax assets. We reassessed our need for a valuation allowance and determined that we did not apply FASB Statement No. 109 properly and that a full valuation allowance should be established for net U.S. and Canadian deferred tax assets based on the weight of positive and negative evidence, particularly our recent history of operating losses.”
(Emphasis sic.) Id. at fn. 5. The BTA concluded that Navistar’s books were “corrected to comport with generally accepted accounting principles.” Id. at 11. There is no reason for this court to tamper with that factual finding. This case should be over.
{¶ 44} I also disagree with the majority’s ruling regarding the complaint by Navistar’s parent corporation filed in federal court in Illinois against its former accountants, Deloitte & Touche, L.L.P. (“Deloitte”), alleging multiple GAAP violations in accounting services Deloitte performed for Navistar in the time period relevant to this case. Navistar Internatl. Corp. v. Deloitte & Touche, L.L.P., N.D.Ill. No. 1:11-cv-03507. One assertion in the complaint reads as follows:
As a direct result of Deloitte’s fraudulent statements and omissions, as well as Deloitte’s incompetence and malpractice, Navistar was forced to fire Deloitte in 2006, hire new auditors, overhaul its accounting records *472 and, in 2007, issue a massive restatement of its financial statements for fiscal years 2003, 2004, and the first three quarters of 2005 * * *.
Maryann B. Gall; Vorys, Safer, Seymour & Pease, L.L.P., Laura A. Kulwicki, and Steven L. Smiseck, for appellant.
Michael DeWine, Attorney General, and Barton A. Hubbard, Assistant Attorney General, for appellee.
Bricker & Eckler, L.L.P., Mark A. Engel, and Anne Marie Sferra, urging reversal for amici curiae, Ohio Manufacturers’ Association and Ohio Chamber of Commerce.
{¶ 45} The majority holds that “the tax commissioner has waived his right to rely on the Illinois complaint as an admission by Navistar and may not do so on remand.” Majority opinion at ¶ 39. But the complaint has been admitted into evidence, and it is unclear what the BTA’s position is on whether the tax commissioner can use the complaint to prove his case. It has some evidentiary value. The hearing examiner, near the end of the hearing, told the tax commissioner’s counsel, “You can make any argument you want about it at this point. It is evidence in the record.” The BTA itself never ruled on how the complaint could be used; it concluded only that it did not need to rely on the complaint to arrive at its decision:
While we acknowledge the commissioner’s reference to the existence of litigation between [Navistar] and the accounting firm previously involved in the audit of its financial returns, such litigation and the allegations made by [Navistar] therein need not serve as the basis upon which we decide this matter given the grant provided by R.C. 5751.53(D).
2013 Ohio Tax LEXIS 7601 at 9, fn. 4. This is not a ruling that precludes the use of the complaint for any reason. How the commissioner may use the complaint remains an open question. It is the BTA, as fact-finder, that must decide what significance to accord the complaint on remand.
O’Donnell, J., concurs in the foregoing opinion.